IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ASHLEY S.,[1]                                      Case No. 1:25-cv-01597-SB

              Plaintiff,                    **OPINION AND ORDER**

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

---

**BECKERMAN, U.S. Magistrate Judge.**

Ashley S. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence in the record.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court's review is limited because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

PAGE 2 – OPINION AND ORDER

**BACKGROUND**

## I.    PLAINTIFF'S APPLICATION

Plaintiff was born in November 1989, making her thirty years old on March 31, 2020, her amended alleged disability onset date. (Tr. 36, 50, 58.) Plaintiff graduated from high school and last worked as a bookkeeper. (*Id.* at 41, 211.) In her DIB application, Plaintiff alleges disability due to a back injury, chronic pancreatitis, depression, anxiety, and "possible gastritis." (*Id.* at 58, 210.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on November 27, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 19.) On July 11, 2024, Plaintiff and an impartial vocational expert ("VE") testified at a telephonic hearing held before an ALJ. (*Id.* at 34-48.) On July 18, 2024, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 19-27.) On July 22, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a

PAGE 3 – OPINION AND ORDER

listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

To establish a "prima facie case of a disability," a claimant must demonstrate "at steps one through four of the sequential evaluation process that she suffers from a severe impairment that prevents her from doing any work she has done in the past, or that she has a severe impairment and has no relevant past work[.]" *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). If the claimant does so, "[t]he burden then shifts to the Commissioner at step five to establish that the claimant can perform a 'significant number[]' of jobs in the national economy given the claimant's physical and mental limitations, age, education, and work experience." *Id.* (first quoting 20 C.F.R. § 416.960(c)(2); and then citing *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). "If the Commissioner meets [his] burden, the claimant has failed to establish disability." *Thomas*, 278 F.3d at 955 (simplified).

## III.    THE ALJ'S DECISION

The ALJ applied the sequential evaluation process to determine if Plaintiff is disabled. (Tr. 19-27.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2020, her amended alleged disability onset date. (*Id.* at 21, 36.) At step two, the ALJ determined that Plaintiff had two medically determinable impairments: chronic pancreatitis and anxiety. (*Id.* at 21-22.) After considering the record evidence, including Plaintiff's testimony and the state agency medical and psychological consultants' opinions, the ALJ concluded that Plaintiff did not have a severe impairment or combination of impairments during the relevant period. (*Id.* at 22-27.) The ALJ in turn found that Plaintiff was not disabled

PAGE 4 – OPINION AND ORDER

and denied her application without considering the remaining steps of the sequential process. (*Id.* at 27.)

## DISCUSSION

Plaintiff argues that the ALJ erred in finding that she failed to make the "de minimis" showing necessary to proceed past step two of the sequential analysis. (Pl.'s Opening Br. at 4, 10-11, ECF No. 10; Pl.'s Reply Br. at 2-8, ECF No. 13; *see also* Def.'s Br. at 2-8, ECF No. 12.) Plaintiff asserts that the ALJ's error stemmed from his failure to provide clear and convincing reasons for discounting her symptom testimony and account for certain evidence that she presented on the severity of her anxiety and pancreatitis. (Pl.'s Opening Br. at 4, 10-11; Pl.'s Reply Br. at 2-8.)

The Court agrees that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence. The Court therefore reverses the Commissioner's decision.

## I.    APPLICABLE LAW

"Step two inquires whether the claimant had severe impairments during the period for which he seeks disability benefits." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). To satisfy the step-two burden, a claimant must establish that she has a "medically severe impairment or combination of impairments that significantly limits h[er] ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citing 20 C.F.R. § 404.1520(a)(4)(ii)); *Glanden*, 86 F.4th at 843 ("An impairment is severe if it 'significantly limits' an individual's 'ability to do basic work activities.'" (quoting 20 C.F.R. § 404.1520(c))).

The Ninth Circuit has adopted the agency's "narrow interpretation" of the step-two regulation in Social Security Ruling ("SSR") 85-28, which "construes step two as a de minimis

PAGE 5 – OPINION AND ORDER

requirement that screens out only frivolous claims." *Glanden*, 86 F.4th at 843 (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)). Given that ALJs "rare[ly]" deny claims at step two, the Ninth Circuit has published only four opinions on this scenario, remanding three cases and affirming one. *See id.* at 844-48 (reversing and remanding after describing the three previously published opinions (first citing generally to *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001); then citing *Webb*, 433 F.3d at 683; and then citing *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005)).

In all of these cases, the Ninth Circuit "reiterated the corollary principles that claimants need only make a de minimis showing for the [sequential] analysis to proceed past [step two] and that properly denying a claim at step two requires an unambiguous record showing only minimal limitations." *See id.* at 843-44 ("An inconclusive medical record precludes denial at this step. If an ALJ is unable to determine clearly the effect of an impairment . . . on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step. Rather, it should be continued.") (simplified). In other words, "once a claimant presents evidence of a severe impairment, an ALJ may find an impairment or combination of impairments 'not severe' at step two 'only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* at 844 (quoting *Webb*, 433 F.3d at 686).

II.    **ANALYSIS**

The parties dispute whether the ALJ's step-two denial was based on harmful legal error and supported by substantial evidence. (*See* Pl.'s Opening Br. at 11-19, invoking "both prongs of judicial review"; Def.'s Br. at 2-12, disputing this threshold assertion). Although the Ninth Circuit's "relevant caselaw" is "limited," it supports finding that Plaintiff "made the requisite showing to meet step two's low bar" because the "cumulative evidence is enough to establish

PAGE 6 – OPINION AND ORDER

that [her] claim is nonfrivolous and . . . require[d] the ALJ to proceed to step three." *See Glanden*, 86 F.4th at 844-45 (reviewing an ALJ's step-two denial and making analogous observations).

    **A.**       **Relevant Caselaw**

It is useful to consider at the outset the Ninth Circuit's decision in *Ukolov* because unlike *Edlund*, *Webb*, and *Glanden*, *Ukolov* is a published opinion involving "precisely th[e] sort of frivolous claim" that ALJs may screen at step two of the sequential process. *See Glanden*, 86 F.4th at 845. In *Ukolov*, there was a "total absence of objective evidence of severe medical impairment" and "even the claimant's doctor was hesitant to conclude that any of the claimant's symptoms and complaints were medically legitimate." *Webb*, 433 F.3d at 688 (citing *Ukolov*, 420 F.3d at 1006). As a result, the Ninth Circuit "affirmed a finding of no disability at step two." *Id.* (simplified).

In *Webb*, by contrast, the Ninth Circuit "remanded for further analysis because substantial evidence did not support the ALJ's finding that [the claimant's] 'claim was groundless.'" *Glanden*, 86 F.4th at 845 (quoting *Webb*, 433 F.3d at 688). The Ninth Circuit in *Glanden* also found that the record "counsel[ed] the same result" as *Webb*. *See id.* at 845, 848 (making this finding and later concluding that the claimant "presented sufficient evidence to overcome the low bar of showing that his claim was not groundless"). In so finding, the Ninth Circuit explained that *Ukolov* was distinguishable because the *Glanden* claimant's "extensive medical history and explanation for his gap in treatment" demonstrated that "substantial evidence [did] not support the finding that the record clearly establishe[d] the absence of severe impairments." *Id.* at 845-46.

The Ninth Circuit also explained that the ALJ's "erroneous step-two denial stemmed from his rejection of [the claimant's] explanation for his treatment gap based on a misreading of the

PAGE 7 – OPINION AND ORDER

record." *Id.* at 845 ("This misinterpretation pervaded the rest of the ALJ's analysis.").

Specifically, the ALJ failed to account for the claimant's testimony that "no free treatment was

available" to him, he could not "afford treatment during the period when he lacked insurance,"

and he "extensively modified his activities" to "cope with his symptoms" in the "absence of

treatment." *Id.* Thus, the Ninth Circuit held that the ALJ failed to satisfy the "clear and

convincing standard[, i.e.,] the most demanding required in Social Security cases" and that

"[b]ecause the record did not clearly establish a slight impairment with no more than a minimal

effect on [the claimant's] ability to work, the ALJ should not have denied the claim at step two."

*Id.* at 845-48 (first quoting *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014); and then

quoting *Webb*, 433 F.3d at 686).

### B.      Plaintiff's Symptom Testimony

As in *Glanden*, the Court finds that the ALJ erred in discounting Plaintiff's subjective

symptom testimony, which "bolster[s]" the conclusion that she "presented sufficient evidence to

overcome the low bar of showing that [her] claim was not groundless." 86 F.4th at 848

(simplified).

It is undisputed that the ALJ discounted Plaintiff's symptom testimony in denying her

claim at step two and that the clear and convincing reasons standard (i.e., the "most demanding

required in Social Security cases," *Garrison*, 759 F.3d at 1015) applies here. (*See* Def.'s Br. at 8-

11 & n.3, arguing that the ALJ's "findings pass the Ninth Circuit's" clear and convincing reasons

"test"; *see also* Tr. 23-24, setting forth the ALJ's evaluation of Plaintiff's subjective symptom

testimony). The Commissioner argues that the ALJ provided two clear and convincing reasons

for discounting Plaintiff's testimony regarding the intensity, persistence, and limiting effects of

her anxiety and chronic pancreatitis: (1) evidence of improvement with treatment, and

(2) conflicting medical evidence, in particular unremarkable mental status exams, tests, and

PAGE 8 – OPINION AND ORDER

imaging. (*See* Def.'s Br. at 9-11, reflecting that the Commissioner respectively turns "[f]irst" and "[s]econd" to improvement and conflicting medical evidence, i.e., physical exams and related test results and "unremarkable mental status exam" findings, and then addresses Plaintiff's arguments).

On this record, substantial evidence does not support the ALJ's discounting of Plaintiff's testimony regarding her anxiety symptoms. *See Webb*, 433 F.3d at 687 (holding that "the ALJ's reasons for rejecting [the claimant's] complaints at step two [were] not substantial enough to meet the clear and convincing standard when balanced against [the claimant's] doctors' contemporaneous observations, some objective tests and [the claimant's] subjective complaints") (simplified); (*cf.* Def.'s Br. at 9-11, defending the ALJ's evaluation of Plaintiff's anxiety on these grounds; Tr. 24, noting that in the final paragraph, the ALJ discounted Plaintiff's testimony about anxiety).

In discounting Plaintiff's symptom testimony, the ALJ explained that Plaintiff's "anxiety significantly decreased when treated with medication and she started getting out of the house more[] and began receiving unemployment benefits[.]" (Tr. 24, citing Ex. 2F at 14, 16, 18-19, 22, 27, 32, 37, 87, 100, 119, 126; Ex. 3F at 15, 20, 26, 28, 31, 101, 115, 134; Ex. 7F at 6-7, i.e., Tr. 500, 502, 504-05, 508, 513, 518, 523, 573, 586, 605, 612, 664, 669, 675, 677, 680, 750, 764, 783, 889-90.) The ALJ also emphasized that Plaintiff's mental status exams were "generally benign" but acknowledged that Plaintiff occasionally reported that she "experienced some anxiety with panic and depression" and presented with "variable mood and affect." (*Id.*) (simplified).

"Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [social security] benefits." *Warre v. Comm'r of Soc. Sec.*

PAGE 9 – OPINION AND ORDER

*Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted). At the same time, however, a physician's "statements must be read in the overall diagnostic picture he draws." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). After all, a claimant "who suffers from severe panic attacks, anxiety, and depression [may] make[] some improvement [but that] does not mean that [her] . . . impairments no longer seriously affect her ability to function in a workplace." *Id.* (simplified).

Furthermore, as the Ninth Circuit has "emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. According to the Ninth Circuit, because "[c]ycles of improvement and debilitating symptoms are a common occurrence, . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* (citing *Holohan*, 246 F.3d at 1205).

In this case, the ALJ improperly relied on isolated exam findings and instances of improvement in Plaintiff's anxiety and failed to consider the overall diagnostic picture that her providers drew. The ALJ also relied on duplicates of records that he previously cited, which is notable in this context. (*See* Tr. 24, citing Tr. 500, 675 (June 3, 2022); Tr. 502, 504-05, 677, 680 (April 1, 2022); Tr. 573, 750 (December 23, 2020); Tr. 586, 764 (September 25, 2020); Tr. 605, 783 (July 2, 2020).)

The ALJ highlighted multiple reports (including duplicates) from a nurse practitioner, Maggie Gressle ("Nurse Gressle"), who "assume[d]" Plaintiff's care after her long-time family nurse practitioner, Kelly Clayton ("Nurse Clayton"), left the clinic on March 4, 2022, nearly two years after the amended alleged disability onset date. (*See* Tr. 24, citing Tr. 500, 502, 504-05,

PAGE 10 – OPINION AND ORDER

664, 669, i.e., Nurse Gressle's records dated April 1, June 3, September 1, and November 2022; Tr. 509, noting that on March 1, 2022, Nurse Clayton informed Plaintiff about her departure and change in provider). Significantly, the diagnostic picture that Nurses Clayton and Gressle drew during the relevant period suggests that Plaintiff's anxiety seriously impacted her ability to function in a workplace:

- August 30, 2019: About seven months before her amended alleged disability onset date and one month after an extended hospitalization for "severe sepsis," "acute pancreatis," and "uninfected necrosis," Plaintiff established care with Nurse Clayton and reported that she had returned to her work as a bookkeeper but was "still experienc[ing] some abdominal pain" and "concerned about re-occurrence" of her severe symptoms of pancreatitis. (Tr. 644; *see also id.* at 274-75, 278-91, 315, 316, describing Plaintiff's hospital stay, including when noise from nearby construction "[c]aused her some anxiety" and a nurse needed to hold her hand and assist with "[b]reathing exercises"). Nurse Clayton's psychiatric exam was positive for anxiety and she noted that Plaintiff's mood and affect were "anxious," she diagnosed a generalized anxiety disorder and prescribed sertraline, and her "standardized tool" for screening "clinical depression" was also "[p]ositive." (*Id.* at 646-49.)

- December 2, 2019: Plaintiff reported that her "[s]tress/anxiety levels ha[d] been increasing [the] last few months" and she "felt better" post-discharge but was now "tired all time" and "fatigued often" and her hair was "[f]alling out in clumps." (*Id.* at 636.) Nurse Clayton noted that Plaintiff admitted to anxiety and sleep

difficulties on exam and presented with an anxious mood and affect. (*Id.* at 638-39.)

- December 23, 2019: Plaintiff's "anxiety had been worse lately" and Nurse Clayton noted that Plaintiff should "move out of [her] parents' home as [it was] a large cause of her anxiety," previously "[t]ried paxil and sertraline," planned to "try citalopram," received a "breakthrough med[ication]" (alprazolam) for "severe panic attacks," and exhibited an anxious mood and affect on psychiatric exam. (*Id.* at 629-32.)

- January 28, 2020: Plaintiff endorsed anxiety, depression, and difficulty sleeping, presented with an anxious mood and affect, and reported "a lot of extra stress at work due to being shorthanded" at work and continued "nausea/vomiting." (*Id.* at 624-27.) Nurse Clayton reported that Plaintiff was "[d]oing well" thus far on citalopram but "still anxious," so she elected to "increase [her] dos[age.]" (*Id.* at 627.)

- March 10, 2020: Plaintiff stopped taking her increased dose of citalopram a "few days after starting it due to stomach pain and nausea" and endorsed posttraumatic stress disorder ("PTSD") and anxiety "from being in the hospital" and being able to "manage" severe panic attacks with "intermittent use of alprazolam." (*Id.* at 620, 623.)

- April 3, 2020: Plaintiff reported that she had been suffering from anxiety, she found that buspirone, sertraline, and citalopram were "ineffective," her "new medication [was] making [her] anxiety much worse," she did not sleep the previous evening, and she had "moderate anxiety over job related stress and

PAGE 12 – OPINION AND ORDER

COVID-19." (*Id.* at 617-19.) She also reported that her "feelings of anxiety ha[d] developed over the past [four] weeks," she had "no work or income for three weeks" because she had been "laid off," she "applied for unemployment" but was "waiting for [a] determination," her hospital stay exacerbated her "[f]ear[]," she was "afraid to come out of home into public" and she needed her "father [to handle] her grocery shopping." (*Id.*) Nurse Clayton's psychiatric exam revealed that Plaintiff's "judgment and insight," "insight [regarding her] current condition," and "judgment for everyday activities and social situations" were all "impaired" and Plaintiff presented with an "anxious" mood and signs of "panic." (*Id.* at 619.)

- June 3, 2020: Plaintiff "looked like a different person" because she appeared "relaxed" and "conversational without anxiety" and reported that she was feeling "remarkably well" and without abdominal pain on a plant-based diet, she was building a greenhouse with her mother, she was not receiving unemployment because her employer failed properly to process her unemployment paperwork, she hoped to return to work in July, she had been able to sleep six to eight hours per night, and she was "astounded at how much difference th[at] makes." (*Id.* at 609-12.)

- July 2, 2020: Plaintiff reported that her anxiety was "[d]oing better," she received her unemployment check, she continued to believe that she suffers from PTSD, and she attributed her reduced anxiety to "not having both work and home stress." (*Id.* at 605-08.)

///

PAGE 13 – OPINION AND ORDER

- July 30, 2020: Plaintiff did not "want to be in public" because she was concerned about COVID-19 and received counseling regarding "family pressure to do things she [did not] want to do or feel comfortable doing." (*Id.* at 600-03; *cf. id.* at 619, suggesting that COVID-19 exacerbated post-intensive care unit fears about being "at risk for death").

- August 21, 2020: Nurse Clayton's exam was positive for depression and anxiety. (*Id.* at 596-99.)

- August 27, 2020: Nurse Clayton noted that Plaintiff presented with an anxious mood and affect and endorsed symptoms of anxiety and depression on exam. (*Id.* at 590-93.)

- September 25, 2020: Nurse Clayton's assessment was positive for "[s]ignificant depression and she noted that Plaintiff presented with an anxious mood and affect and reported that being ready to return to work" and "get out of [the] house more now" and the increase in depression was related to her "living situation." (*Id.* at 586-89.)

- October 23, 2020: Nurse Clayton's psychiatric exam was positive for depression and anxiety and she noted that Plaintiff presented with an anxious mood and affect and reported that she continued to have anxiety and look for a job. (*Id.* at 582-85.)

- November 24, 2020: Clayton noted that Plaintiff, who was tearful during her visit, reported that she had been "very anxious and nauseous" and that she was upset about a discussion with a medical assistant, which Nurse Clayton overheard and described as "professional" and concerning only "a clear guideline with which

PAGE 14 – OPINION AND ORDER

[Plaintiff was] familiar." (*Id.* at 579.) Nurse Clayton noted that Plaintiff's exam revealed that "rapidity of thinking [was] present," Plaintiff's "thought processes [were] tangential," and Plaintiff's mood and affect were "anxious." (*Id.* at 580-81.) Nurse Clayton advised Plaintiff that "[t]reating symptoms [was] a band-aid approach to a bigger issue of depression/anxiety" and that she "need[ed] mental health care" and to consider a psychiatric "evaluation and treatment at Curry Mental Health," even though she was "resistant" to such recommendations. (*Id.* at 581.)

- December 23, 2020: Plaintiff's anxiety was "better with escitalopram." (*Id.* at 573-76.)

- February 17, 2021: Nurse Clayton increased the dosage of Plaintiff's medication, advised Plaintiff to "call Curry Mental Health," and noted that Plaintiff endorsed anxiety, depression, and difficulty sleeping, presented with an anxious mood and affect, and tried to avoid taking her breakthrough medication on a nightly basis. (*Id.* at 564-68.)

- March 16, 2021: Plaintiff informed Nurse Clayton that she was unable to "tolerate" her increased dosage of buspirone" because it resulted in "severe nausea" and that she was feeling "withdrawn," depressed, and anxious. (*Id.* at 560-63.)

- April 16, 2021: Plaintiff endorsed depression and anxiety, her mood and affect were anxious, and she had a "hard time" after "put[ting] down [her] dog." (*Id.* at 555-59.)

///

PAGE 15 – OPINION AND ORDER

- May 21, 2021: Nurse Clayton noted that Plaintiff exhibited signs of "mild panic" and anxiety, endorsed anxiety, and presented with an anxious mood. (*Id.* at 551-54.)

- July 16, 2021: Nurse Clayton's psychiatric exam was positive for depression, anxiety, and sleep difficulty and Plaintiff's mood and affect were "anxious." (*Id.* at 546-50.)

- September 10, 2021: On psychiatric exam, Plaintiff endorsed feeling "withdrawn" and suffering from anxiety and presented with an anxious mood and affect. (*Id.* at 540-45.)

- September 27, 2021: Nurse Clayton noted that Plaintiff complained of tooth decay-related pain, reported "regular" nausea and vomiting that was "likely contributing to [her] poor oral health," endorsed anxiety and depression, exhibited "rapidity of thinking," and presented with an anxious mood and affect. (*Id.* at 535-39.)

- October 8, 2021: Plaintiff reported that she was "not taking medication for anxiety" and experienced "moderate anxiety over stress related to a relationship" and Nurse Clayton noted that she presented with an anxious mood and affect. (*Id.* at 532-34; *see also id.* at 521-26, November 5, 2021, describing the same mood and affect).

- January 4, 2022: Nurse Clayton's exam was positive for depression and anxiety and she referred Plaintiff to a gastroenterologist regarding her pancreatitis. (*Id.* at 511-15.)

///

PAGE 16 – OPINION AND ORDER

- March 1, 2022: During her final visit with Nurse Clayton, Plaintiff presented with an anxious mood and "appropriate" affect and Nurse Clayton noted that her psychiatric exam was positive for depression and anxiety. (*Id.* at 506-10, noting Nurse Clayton's departure and scheduling a four-week follow-up with Nurse Gressle).

- April 1, 2022: Plaintiff stated that her "anxiety [was] high with everything going on" and Nurse Gressle noted that Plaintiff's anxiety was "under good control." (*Id.* at 502-05.)

- June 3, 2022: Nurse Gressle described Plaintiff's anxiety as under "good control" but also cited Plaintiff's reports that her anxiety was "good when home by herself but she [could not] be home alone for too long as that makes her anxious too" and she continued to have "intermittent bou[ts] of diarrhea[] and constipation." (*Id.* at 496-500.)

- September 1, 2022: Plaintiff complained primarily of depression and anxiety and reported that she had "not been feeling well because of [gastrointestinal] upset" (i.e., nausea) and ongoing "tension headache[s.]" (*Id.* at 491, 493.) Nurse Gressle reported that Plaintiff's "[d]epression/anxiety" was "doing somewhat better," Plaintiff's "medication really help[ed]," and Plaintiff was "making progress" to the extent that she was "able to come into the office [that day] and sit in the waiting room," neither of which she had "been able to do . . . in a long time." (*Id.* at 494.) Nurse Gressle added that Plaintiff's "[c]hronic pancreatitis" was "[c]urrently under control" but she had "intermittent episodes of just not feeling well." (*Id.*)

PAGE 17 – OPINION AND ORDER

- November 1, 2022: Plaintiff informed Nurse Gressle that she "[f]eeling good." (*Id.* at 661.) Nurse Gressle described Plaintiff's mood and affect as normal and appropriate and that her anxiety was "under good control" with alprazolam. (Tr. 664.)

- February 1, 2023: Nurse Gressle described Plaintiff's "[c]hronic pancreatitis" as "under good control" despite "some associated problems [with] hair loss and [her] teeth [were] falling out/decaying." (*Id.* at 656-60.) Nurse Gressle also noted that Plaintiff had "daily bouts" of nausea, "some days [were] better than others" with respect to nausea, and she was "using ondansetron to help control it." (*Id.* at 660.) Nurse Gressle added that buspirone was "working well" for Plaintiff's anxiety. (*Id.*)

- August 29, 2023: Plaintiff endorsed anxiety, depression, and difficulty sleeping. (*Id.* at 874-76.)

Given this evidence, the Court finds that the ALJ's reasons for rejecting Plaintiff's anxiety "complaints at step two [were] not substantial enough to meet the clear and convincing standard when balanced against [Plaintiff's providers'] contemporaneous observations, some objective tests[,] and [Plaintiff's] subjective complaints." *See Webb*, 433 F.3d at 687 (making a similar finding); *cf. Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (noting that "[p]sychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields" and that "[d]iagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient," because that is the "nature of psychiatry") (simplified).

///

PAGE 18 – OPINION AND ORDER

Standing alone, this finding necessitates a remand for further proceedings. (*See* Tr. 26-27, determining that Plaintiff's "physical and mental impairments, considered singly and in combination, do not significantly limit [her] ability to perform basic work activities" and that as a result, Plaintiff failed to establish that she has any "severe impairment or combination of impairments"). Thus, the Court reverses the Commissioner's decision and remands for further proceedings because the ALJ's step-two denial was "premature." *Glanden,* 86 F.4th at 848. The Court "express[es] no view as to whether [Plaintiff] will succeed in proving that [s]he is entitled to benefits[.]" *Id.*

## CONCLUSION

For the reasons stated, Court REVERSES the Commissioner's decision and REMANDS this case to the agency for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 28th day of July, 2026.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 19 – OPINION AND ORDER